IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOBAK SAUSAGE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BOBAK ORLAND PARK, INC. d/b/a ) <br> Frank Bobak Fresh Marketplace, ) <br> BOBAK NAPERVILLE, INC., and ) <br> BOBAK BURR RIDGE, INC., ) <br> ) <br> Defendants. ) | Case No. 06 C 4747 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court held an evidentiary hearing on whether defendants should be held in contempt for allegedly violating, in various respects, a stipulated permanent injunction entered by the Court on November 9, 2006. For the reasons stated below, the Court finds that defendants violated, or failed to comply with, the injunction in several respects and holds then in contempt.

### Background

On August 31, 2006, Bobak Sausage Company ("Bobak's") filed suit against Bobak Orland Park, Inc., Bobak Naperville, Inc., and Bobak Burr Ridge, Inc. Bobak's, which makes, distributes, and sells meat products and operates a restaurant and retail store on Archer Avenue in Chicago, alleged that it is the owner of federally registered trademarks: BOBAK'S, which it has used continually since 1967; a stylized version of that same word, used continually since 1988; and a pig logo, used continually since 1989.

Several years ago, Frank Bobak, the founder of Bobak's, transferred ownership of the

company to his sons Stan, John, and Joe. By the year 2004, the three brothers, through an entity called Bobak Enterprises, Inc., had opened retail / restaurant operations in Naperville and Burr Ridge, each of which used the trademarks with Bobak's permission.

Bobak's experienced financial difficulties, and in early 2006, Bobak's and Bobak Enterprises underwent a reorganization. Bobak Enterprises was dissolved, and the Naperville and Burr Ridge stores were sold to third parties Fruitland of Naperville, Inc. and Fruitland of Burr Ridge, Inc. John Bobak sold his Bobak shares to Stan, leaving Stan with two-thirds of the stock of Bobak's and Joe with one-third. As part of the consideration for his stock, John Bobak received full ownership of a retail grocery store that Bobak Enterprises was in the process of building in Orland Park.

As part of the reorganization, Bobak's granted the two Fruitland entities a license to use the Bobak's trademarks for six months under various conditions, including an agreement not to manufacture meat products using the name Bobak's and not to sell products under the Bobak's name unless purchased from Bobak's. No such license was given to or sought by the Orland Park operation. The Orland Park store opened in July 2006 under the name Frank Bobak Fresh Marketplace.

On August 18, 2006, the limited license for use of the Bobak's marks granted as part of the reorganization expired. In its lawsuit, filed on August 31, 2006, Bobak's alleged that the defendants were infringing the Bobak's trademarks by the Orland Park operation's use of the name Frank Bobak Fresh Marketplace on its store and in advertising; all three stores' use of the name Frank Bobak Fresh Marketplace on product sold in the stores; their use of stylized lettering for the word "Bobak" in a way said to be confusingly similar to Bobak's stylized mark; their sale

2

of product bearing the name "Bobak" or "Bobak's" that was not manufactured by Bobak's Sausage Co.; falsely suggesting affiliation with Bobak's in various ways; and engaging in various other actions aimed at confusing the public, including use of Bobak's slogan "a Chicago tradition since 1967."

On September 29, 2006, after hearing argument and considering briefs from both sides, the Court entered a temporary restraining order barring defendants from using, among other things, the three registered Bobak's marks or any other term containing the word "Bobak," including "Frank Bobak Fresh Marketplace." The order also required defendants to place in their advertising a disclaimer of affiliation with Bobak's, "until all usage of the Bobak name has been phased out."

The parties thereafter engaged in settlement negotiations, assisted by Magistrate Judge Sidney Schenkier. They agreed on the terms of a consent decree, which the Court entered on November 9, 2006 under the title "stipulated permanent injunction." The injunction contained the following requirements and prohibitions, among others:

- The suburban stores would choose a new trade name "sufficiently distinct from the [Bobak's] Marks as as to reasonably avoid a likelihood of confusion." The new trade names could contain the word "Bobak" in conjunction with other words, but had to be written in a script different from that employed in the Bobak's marks. The name "Frank Bobak Fresh Marketplace" was specifically deemed acceptable, and the name "Bobak Sausage Company" was specifically deemed unacceptable.

- The suburban stores could not use the word "Bobak" or "Bobak's," or any of the marks, other than via their new trade names.

3

- The suburban stores could not use the word "Bobak" or "Bobak's" or any of the Bobak's marks on product labels or packaging. They could, however, use their new trade names on "scale labels" listing the weight of product sold at a deli counter, so long as the scale labels for "all meat and deli products packaged on the premises and sold over the deli counter which are the same as or substantially similar to" a list of product made by Bobak's included a specified disclaimer of affiliation with Bobak's.

- The suburban stores would "use good faith efforts" to display their new trade names on the front of their stores within forty-five days of entry of the injunction – that is, by December 24, 2006. In the interim, they were permitted to use the names "Frank Bobak Fresh Marketplace" or "Frank B's" but not "Bobak's" or "Bobak Sausage Company." Product labels and interior signs containing the words Bobak or Bobak's were to be removed within thirty days of the injunction – that is, by December 9, 2006.

- The suburban stores could use the "Bobak pig" on interior signs.

- The suburban stores could not use the phrases "A Chicago Tradition Since 1967" and "A Tradition Since 1967."

- So long as the suburban stores used new trade names containing the word "Bobak" (such as "Frank Bobak Fresh Marketplace") they were required to "place a permanent disclaimer sign on or immediately adjacent to their primary store entrance" stating "Our Products Are Not Made by Bobak Sausage Company."

- The suburban stores would make a good faith effort to arrange for the landlord of the shopping center where the Orland Park store is located to remove or change the "Bobak's Plaza" legend on the "monument" sign for the shopping center.

4

- The suburban stores could not make, for nine months, wholesale sales of meat and deli products that they made on their own premises or had someone else make for them.

On January 12, 2007, Bobak's moved for issuance of a rule to show cause, arguing that defendants were violating the injunction in numerous ways. The Court issued a rule to show cause on February 8, 2007 and held an evidentiary hearing on February 15 and March 1, 2007.

The parties then filed post-hearing briefs. Bobak's post-hearing brief included an affidavit by which Bobak's proposed to supplement its evidence at the hearing. Defendants' motion to strike the affidavit is granted. Both sides were given ample opportunity to offer evidence at the hearing, and both sides rested their cases at the conclusion of the hearing. Absent a motion to reopen the evidence for good cause – a request that Bobak's has not made – the evidence was closed at that time.

## Discussion

A court has the inherent authority to enforce compliance with its lawful orders, including consent decrees, through civil contempt. *Spallone v. United States,* 493 U.S. 265, 276 (1990). A court may impose sanctions for civil contempt "'to coerce disobedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *United States v. Berg,* 20 F.3d 306, 311 (7th Cir. 1994) (quoting *Connolly v. J.T. Ventures,* 851 F.2d 930, 932 (7th Cir. 1988)).

Before a court may find a party in contempt for violating a court order, the complaining party must prove by clear and convincing evidence that the other party violated the order or has not been reasonably diligent in attempting to accomplish what was ordered. *Id.*; *United States v. Heubner,* 752 F.2d 1235, 1241 (7th Cir. 1985).

The Court finds as follows:

1. *Use of the name Frank Bobak Fresh Marketplace.* Defendants' use of the trade name Frank Bobak Fresh Marketplace is, quite plainly, not a violation of the stipulated injunction. Bobak's specifically agreed in the injunction that defendants could use this as their trade name. Stipulated Injunction ¶ 1.

2. *Exterior signage on stores.* It is undisputed that defendants did not post exterior signs with the new trade name "Frank Bobak Fresh Marketplace" within forty-five days after entry of the injunction, as the injunction required. By today's date, a period of nearly three times that has passed, but no new exterior signs have been posted. In the interim period, defendants covered over their existing signs, but they did so in an inadequate way that makes the now-prohibited former trade names clearly visible at night, when the signs are illuminated. Defendants could have taken steps to turn off the lighting at night, but they chose not to do so, saying this would make it appear that the stores were closed.

The evidence offered at the hearing reflects that in November 2006, defendants obtained estimates for exterior signs that would comply with the injunction. New signs at the three stores were estimated to cost about $100,000, with one-half payable upon signing of a contract with the signmaker, and the remainder payable upon installation. The estimates reflected that it would take from two to three months to get the signs installed once the contract was signed. That, however, is where things stopped. Defendants' representative testified that compliance would be expensive, but that does nothing more than restate the obvious. When they entered into the stipulated permanent injunction, defendants knew or reasonably should have known that a significant expense would be involved in complying with this aspect of the injunction.

Defendants' representative testified that they made a choice to devote resources to purchasing merchandise rather than to purchasing new signs. This might have been a reasonable choice in the absence of an injunction, but defendants have offered no authority for the proposition that they are entitled to put compliance with a court-imposed injunction at the bottom of their list of priorities. Nor have defendants made reasonable efforts to obscure their former signs in a way that complies with the injunction by preventing them from being seen. Their claims that they would violate local zoning requirements by doing a better job to cover up the signs are entirely unsupported.

In sum, plaintiff has proven by clear and convincing evidence that defendants have violated paragraph 3 of the injunction by failing to make a good faith effort to post exterior signs complying with the injunction's terms and have violated paragraph 1 of the injunction by failing to cover up the former signs properly.

3. *Script used on signs.*

The exterior sign stating "Frank Bobak's Sausage Company" on the front of the Orland Park store, the "Bobak's" sign on the shopping center where the Naperville store is located, and any other signs spelling out the word "Bobak" using what appears to be sausages unquestionably violate the injunction's requirement that "[t]he New Trade Names will be written in a script different from that employed in the Marks." Stipulated Injunction ¶ 1. Once these signs are properly covered and eventually removed, as the Court will require as part of this order, the violation will be remedied.

Plaintiff has also proven by clear and convincing evidence that the script currently being used for the word "Bobak" in the new trade name "Frank Bobak Fresh Marketplace" on the

7

outside of the Orland Park store is confusingly similar to the script protected by the registered Bobak's mark. It quite plainly uses the same sausage format used in the stylized mark. This sign must be replaced as part of the remedial order the Court will impose. Plaintiff has failed to prove, however, that the new sign of the type outside the Naperville store, exemplified by the script used in Plaintiff's Exhibit A-1, is confusingly similar to the Bobak's stylized mark.

      4.    *Sign in front of Orland Park shopping center.* Plaintiff has failed to demonstrate that defendants have not made a good faith effort to persuade the owner of the Orland Park shopping center to replace the "Bobak's Plaza" sign. By way of its contempt request, plaintiff is, in effect, seeking a term that it did not get in the negotiations for the stipulated injunction: making defendants pay to take down the sign.

      5.    *Disclaimers at store entrances.* The stipulated injunction provides that so long as defendants use a "new trade name" with the word Bobak in it, they must "place a permanent disclaimer sign on or immediately adjacent to their primary store entrance." The disclaimer sign must state "Our Products Are Not Made by Bobak Sausage Company." Stipulated Injunction ¶ 6.

Plaintiff has shown by clear and convincing evidence that prior to the filing of the motion for rule to show cause, defendants attempted to evade this provision. There were no permanent signs at all prior to the filing of plaintiff's motion. In addition, plaintiff documented numerous instances when no signs were posted. In other instances, the signs were decidedly temporary – printed on 8 x 11 paper. In some instances, they were posted not at the *entrances* of the stores but at the *exits* – in other words, customers saw them only as they left the store after buying

8

merchandise.[1]

In addition, the current "permanent" sign, a picture of which was offered by defendants at the hearing, tends to suggest *association* between the defendant and Bobak's, not dissociation. *See* DX 8, photograph 1. The sign, a copy of which is reproduced in an appendix to this decision, is quite obviously intended to suggest that Frank Bobak Fresh Marketplace is the true inheritor of the Frank Bobak tradition; the statement, "our products are not made by Bobak Sausage Company" appears as an afterthought at the end of what is plainly an advertisement, not a disclaimer.

      6.    *Use of Bobak name on deli counter scale labels without disclaimers.* It is undisputed that defendants have used and are using the name "Frank Bobak Fresh Marketplace" on scale labels for products packaged at the deli counter. The stipulated injunction permits them to do this but requires them to include the disclaimer "Our Products Are Not Made by Bobak Sausage Company" on the scale labels applied to the packages given to customers. Stipulated Injunction ¶¶ 2 & 6.

The evidence is overwhelming that defendants have *never* complied with this requirement of the injunction. Defendants' contention that no product is "sold over the deli counter" because all products are paid for at cash registers at the front of the store is absurd; it would render meaningless the scale label provisions of the stipulated injunction. Consent decrees are interpreted like contracts, *see, e.g., United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238 (1975), and contracts are interpreted to avoid rendering any provision

---

[1] Though the main entrance may be the same doorway as the main exit, the distinction is not semantic. A disclaimer that a customer sees only when leaving the store does nothing to eliminate confusion.

meaningless.  *See, e.g., Utility Audit, Inc. v. Horace Mann Svc. Corp.,* 383 F.3d 683, 688 (7th Cir. 2004).

7. *Sale of "Frank & Angie" products at deli counters without disclaimers.*  The stipulated injunction does not prohibit defendants from selling meat products under the "Frank & Angie" name.  The injunction provides, however, that "scale labels for all [ ] meat and deli products packaged on the premises and sold over the deli counter which are the same as or substantially similar to the products manufactured by Bobak Sausage" and listed in Exhibit A must contain the disclaimer "Our Products Are Not Made by Bobak Sausage Company."  Stipulated Injunction ¶¶ 2 & 6.

Defendants have not complied with this requirement of the injunction with regard to their sales of "Frank & Angie" products within the scope of Exhibit A that are packaged on the premises of their stores and sold over the deli counter.  The injunction provides that the disclaimer need not be placed on scale labels "on name brand products which are not made by the Suburban Stores and are sold under brand names (*e.g.* Krakus Ham)," if the brand name is reasonably prominent on the scale label.  Stipulated Inunction ¶ 2.  Assuming for purposes of discussion that the Frank & Angie products are "name brand products," which is by no means clear, they *are* made by the suburban stores.  The products are ostensibly made by a company called "Frank and Angie's Sausage Company," which John Bobak established eight days after the injunction was entered.  The company has no employees of its own and operates out of the Orland Park location, using employees and equipment belonging to the Orland Park entity.  The evidence clearly and convincingly establishes that the Frank & Angie products are, in fact "made by the Suburban Stores."  The disclaimer is therefore required.

8. *Use of Bobak name on grocery carts and employee uniforms.* Plaintiff has not proven by clear and convincing evidence that defendants violated the injunction by reason of the continued presence of the name "Bobak" on the handles and child seats of grocery carts, and on some occasions on clothing that defendants' employees wore to work. The Court finds that defendants made appropriate efforts first to obscure and then to remove the names from the grocery carts and that they have instructed employees not to wear uniforms from the pre-injunction days.[2] There is no indication that the injunction was intended to require defendants to buy all new grocery carts. Though defendants' apparently ongoing effort to obliterate the use of the Bobak's name from grocery carts (except as part of the permitted "new trade name" Frank Bobak Fresh Marketplace) continues to be subject to the injunction and monitoring by the Court, at this time there is no basis for a contempt finding in this regard.

**Remedy**

Defendants have until 5:00 p.m. on Friday, April 6, 2007 to provide evidence to the Court and to plaintiff establishing that they have signed binding contracts to purchase and install new exterior signs on each of the three stores that comply with the terms of the injunction. This includes the making of any deposits or initial payments required by the sign makers. If defendants fail to do so, a civil fine of $500 per day per store will be imposed, beginning on Friday April 7, 2007, until defendants provide such evidence.

Unless exterior signs that comply with the injunction are actually installed by no later than June 7, 2007, a civil fine of $500 per day per store will be imposed until such signs are

---

[2] The injunction permits defendants to use employee uniforms bearing the name Frank Bobak Fresh Marketplace. Stipulated Injunction ¶ 1 (allowing use of the "New Trade Names").

installed.

By no later than 5:00 p.m. on Friday, April 6, 2007, defendants are directed to cover the current exterior signs in a way that obscures the former trade names when the signs are illuminated at night. Defendants are directed to submit evidence of their compliance with this requirement to the Court by no later than that same time and date. If defendants fail to do so, a civil fine of $100 per day per store will be imposed until they comply with this requirement.

By no later than the start of business on Friday, April 6, 2007, defendants must include the disclaimer required by the injunction on all "Frank & Angie" products distributed over the deli counters in all of the suburban stores and on all products distributed over the deli counter that include labels with a trade name containing the word "Bobak." (This is not intended to narrow, in any way, the injunction's requirements.) Defendants are directed to submit evidence of their compliance with this requirement to the Court by no later than 5:00 p.m. on April 6, 2007. If defendants fail to do so, a civil fine of $100 per day per store will be imposed until they comply with this requirement.

By no later than April 6, 2007, defendants must post a permanent disclaimer sign at the entrances of each of the suburban stores. The signs must be clearly visible to customers entering the stores. The signs are to include a statement that "our products are not made by Bobak Sausage Company," and may also include the heading "to our customers" and the conclusion "the owners." The signs may also include, if defendants wish, a statement of regret for any confusion. They may not, however, include any other wording, and specifically, they may not include any other term or phrase containing the word "Bobak." In this regard, the Court notes that the sign depicted in Defendant's Exhibit 8, photograph 2, would comply with this

requirement if it used the word "our" in place of the phrase "Frank Bobak Fresh Marketplace." Defendants are directed to submit evidence of their compliance with this requirement to the Court by no later than 5:00 p.m. on April 6, 2007. If defendants fail to do so, a civil fine of $100 per day per store will be imposed until they comply with this requirement.

The Court denies plaintiff's request for a modified injunction. The Court sees no basis to imposed a renegotiated version of what the parties agreed to at the time of the stipulated permanent injunction.

**Conclusion**

Defendants are held in contempt as outlined in this order and are hereby directed to comply with each and every one of the terms contained in the "Remedy" section of this order. The case is set for a status hearing on April 10, 2007 at 9:30 a.m.

_____
                    MATTHEW F. KENNELLY
                      United States District Judge

Date:   March 19, 2007

