# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOBAK SAUSAGE CO., )<br>)<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>BOBAK ORLAND PARK, INC. d/b/a )<br>Frank Bobak Fresh Marketplace, )<br>BOBAK NAPERVILLE, INC., and )<br>BOBAK BURR RIDGE, INC., )<br>)<br>    Defendants. ) | Case No. 06 C 4747 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Bobak Sausage Company has moved the Court for an order compelling the transfer of John Bobak's interest in Bobak Fifty Third Street LLC in satisfaction of the contempt judgment entered January 28, 2008. For the reasons stated below, the Court denies the motion but orders the parties to show cause why the Court should not take certain alternative steps in furtherance of enforcement of the judgment

## Background

On August 31, 2006, Bobak Sausage Company ("BSC") filed suit against Bobak Orland Park, Inc., Bobak Naperville, Inc., and Bobak Burr Ridge, Inc. BSC, which makes, distributes, and sells meat products and operates a restaurant and retail store on Archer Avenue in Chicago, alleged that it is the owner of federally registered trademarks: BOBAK'S, which it has used continually since 1967; a stylized version of

1

that same word, used continually since 1988; and a pig logo, used continually since 1989.

Several years ago, Frank Bobak, the founder of BSC, transferred ownership of the company to his sons Stanley, John, and Joseph. By the year 2004, the three brothers, through an entity called Bobak Enterprises, Inc., had opened retail and restaurant operations in Naperville and Burr Ridge, each of which used the trademarks with BSC's permission.

In addition to BSC, each of the brothers also owned a one-third membership interest in Bobak Fifty Third Street, LLC ("Bobak 53"), an Illinois limited liability company. In March 2005, Bobak 53 acquired an industrial building located directly behind the BSC restaurant and store. BSC had leased the building from a third party before Bobak 53's acquisition and continued to lease the building from Bobak 53 under an oral lease.

BSC experienced financial difficulties, and in early 2006, the brothers reorganized BSC and Bobak Enterprises. Bobak Enterprises was dissolved and John Bobak sold his BSC shares to Stanley, leaving Stanley with two-thirds of the stock of BSC and Joseph with one-third. As part of the consideration for his stock, John received full ownership of a retail grocery store that Bobak Enterprises was in the process of building in Orland Park.

In August 2006, BSC filed this suit, alleging trademark infringement. On September 29, 2006, the Court entered a temporary restraining order barring defendants from using several of BSC's trademarks. The parties thereafter engaged in settlement negotiations, assisted by Magistrate Judge Sidney Schenkier. They agreed

2

on the terms of a consent decree, which the Court entered on November 9, 2006 under the title "stipulated permanent injunction." The injunction contained the several requirements and prohibitions.

In January 2007, BSC moved for issuance of a rule to show cause, arguing that defendants Bobak Orland Park, Inc., Bobak Naperville, Inc., and Bobak Burr Ridge, Inc. were violating the injunction in numerous ways. The Court issued a rule to show cause on February 8, 2007 and held an evidentiary hearing on February 15 and March 1, 2007. The Court found that all the defendants had violated the stipulated permanent injunction in several ways, held them in contempt, and ordered them to comply with aspects of the stipulated permanent injunction by April 7, 2007 or face penalties.

In September 2007, BSC again moved the Court to find Bobak Orland Park, Inc. and non-party John Bobak in contempt. On December 4, 2007, the Court granted BSC's motion, finding both Bobak Orland Park, Inc. and John Bobak in contempt of court for continued violations of the stipulated permanent injunction. The Court found that BSC had proved by clear and convincing evidence that Bobak Orland Park, Inc. and John Bobak knowingly violated three provisions of the stipulated permanent injunction. BSC proposed a remedial fine of $150,000, which the Court determined was a fair and reasonable estimate of the harm incurred by BSC as a result of the violations. The Court imposed that fine on Bobak Orland Park, Inc. and John Bobak, jointly and severally, to be paid to BSC within twenty-one days. If not paid within that time, interest would begin to accrue. Upon BSC's later motion to enforce the order imposing the fine, the Court entered a judgment against John Bobak and Bobak Orland Park, Inc. in the same amount, plus interest, on January 28, 2008.

About two weeks later, John Bobak and his brother Joseph filed suit against BSC, Bobak 53, and Stanley Bobak in the Circuit Court of Cook County, Chancery Division. *Bobak v. Bobak Sausage Co.*, Case No. 08 CH 05797. Aside from three other claims against BSC and Stanley, John and Joseph allege that Stanley breached his fiduciary duty in managing Bobak 53 and ask for dissolution of that entity

Unsuccessful in its effort to collect on the contempt judgment, save for a $5,000 check, BSC served a citation to discover assets upon John Bobak and Bobak Orland Park, Inc. on July 3, 2008. BSC thereafter moved the Court to order the turnover of John Bobak's membership interest in Bobak 53.

## Discussion

### A. Rule 69 and Rule 70

Federal Rules of Civil Procedure 69(a) and 70 govern the enforcement of judgments in federal court. Rule 69(a) provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a). The procedure on execution "must accord with the procedure of the state where the court is located." *Id.*

Rule 70 gives courts wider latitude in certain circumstances. "If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done." Fed. R. Civ. P. 70(a). Rule 70 also allows courts to issue writs of attachment and to hold disobedient parties in contempt. *Id.*

4

Though the first sentence of Rule 69(a) appears to allow some flexibility in the availability of remedies beyond a writ of execution to enforce a money judgment, courts have construed this language narrowly. *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349 (1st Cir. 1997). Specifically, Rule 69(a) "does not authorize enforcement of a civil money judgment by methods other than a writ of execution, except where 'well established principles [so] warrant.'" *Id.* (quoting 13 J. Moore, Moore's Federal Practice ¶ 69.02, at 69-5 (3d ed. 1997)).

Some courts have utilized Rule 70 to enforce money judgments in relatively narrow circumstances. The First Circuit summarized those circumstances as follows:

> One such situation is where an action for contempt has been instituted for failure to pay an obligation imposed by statute in order to enforce the public policies embodied in the statutory scheme. *See, e.g., McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-95 (1949). Another is where there has been a congressional determination to provide the government with the ability to seek a writ of *ne exeat* in furtherance of enforcing tax obligations. *See, e.g.,* 26 U.S.C. § 7402(a). A third is where the judgment is against a state which refuses to appropriate funds through the normal process provided by state law. *See, e.g., Spain v. Mountanos*, 690 F.2d 742, 744-45 (9th Cir. 1982); *Gary W. v. Louisiana*, 622 F.2d 804, 806 (5th Cir. 1980). In contrast, the size of the award and the difficulties in enforcing the judgment due to the location of the assets and *the uncooperativeness of the judgment debtor* are not the types of extraordinary circumstances which warrant departure from the general rule that money judgments are enforced by means of writs of execution rather than by resort to the contempt power of the courts. *See Hilao* [*v. Estate of Marcos*], 95 F.3d [848] at 855 [(9th Cir. 1996)].

*Id.* at 349 n.4 (emphasis added). In addition, BSC points to some cases within this circuit that approve the use of Rule 70 to enforce a money judgment in particularized circumstances. *See Entertainment Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3692410 at *3 (N.D. Ill. Dec. 3, 2006) (suggesting that the entry of an order under Rule 70 might be appropriate because the state officers seemed to be ignoring a

5

money judgment); *Preston v. Thompson*, 565 F. Supp. 294, 305 n.19 (N.D. Ill. 1983) ("in proper circumstances a Rule 70 order is appropriate to enforce an attorney's fees award against the state"). The defendants in those cases were government officers. Although BSC is correct that none of these decisions state that the judgment debtor must be a governmental entity for a court to order relief under Rule 70, none of those cases mentions the possibility of using Rule 70 against a non-governmental judgment debtor.

Taking an expansive view of the Court's inherent contempt powers, BSC argues that John Bobak's continued refusal to abide by the stipulated permanent injunction and his refusal to pay the contempt fine turn this case into one of extraordinary circumstances. The Court is unconvinced, at least on the current record. John Bobak is a manifestly uncooperative judgment debtor, but no authority indicates that uncooperativeness is sufficient to turn a case into one in which the remedies of Rule 70 are available. *Id.* Although BSC criticizes the assumptions underpinning the cases cited above, it fails to point to any authority that directly supports its position that Rule 70 could apply in a case involving a money judgment owed by a private judgment debtor like John Bobak. Though the Court does not rule out the possibility that such circumstances might exist in an appropriate case, they do not exist—as least not yet—in this case.

**B.    Illinois supplementary proceedings**

As indicated earlier, Rule 69 provides that the procedure on a writ of execution "must accord with the procedure of the state where the court is located." Fed. R. Civ. P.

6

69(a). The Court, therefore, looks to Illinois law on post-judgment collection proceedings.

Illinois law provides that a judgment creditor may prosecute supplementary proceedings to examine the judgment debtor's assets that are available to satisfy the judgment. 735 ILCS 5/2-1402(a). The judgment creditor commences such a proceeding by serving a citation to discover assets. *Id.* The Court may then "compel the judgment debtor to deliver up, to be applied in satisfaction of the judgment," any nonexempt asset "in his possession or control." *Id.* 2-1402(c)(1).

Both BSC and John Bobak agree that John Bobak owns a one-third interest in Bobak 53 and that the interest is not exempt from satisfaction of the judgment. The parties disagree, however, over the proper method of liquidating the asset so that it may be applied to the judgment. BSC asks the Court to force John Bobak to turn over to BSC his interest in Bobak 53. John Bobak contends that the only permissible method of disposition of that interest is by a public sale held by a sheriff. Alternatively, John Bobak suggests that the Court allow dissolution of Bobak 53 in the pending Illinois state court case.

Section 2-1402(e) provides that property delivered up by the debtor or by third-parties "shall, except as otherwise provided in this Section, be delivered to the sheriff to be . . . sold at public sale and the proceeds thereof applied towards the payment of costs and the satisfaction of the judgment." *Id.* 2-1402(e). John Bobak argues that a membership interest in an LLC cannot be transferred directly to a judgment creditor in satisfaction of a judgment. In *Dowling v. Chicago Options Assocs., Inc.,* 365 Ill. App. 3d 341, 847 N.E.2d 741 (2006), the Illinois Appellate Court held that, under Section 2-

7

1402(e), a judgment debtor's membership interest in an LLC must be sold at a public sale. *Id.* at 355, 947 N.E.2d at 752.

A closer look at both the case and the statute reveal, however, that there is more room for flexibility than John Bobak suggests. The first sentence of Section 2-1402(e), quoted earlier, provides the general procedure for disposition of nonexempt assets. The second sentence states that "[i]f the judgment debtor's property is of such a nature that is not readily delivered up to the sheriff for public sale or if another method of sale is more appropriate to liquidate the property . . . the court may order the sale of such property by the debtor . . . or by a selling agent other than the sheriff." 735 ILCS 5/2-1402(e). *Dowling* does not take account of this statutory provision.

It is clear that John Bobak's interest in Bobak 53 is relatively illiquid because the operating agreement severely limits the alienability of full membership interests. The Illinois LLC statute provides that a transferee of an interest in an LLC takes the interest "in accordance with the authority described in the operating agreement or all other members consent." 805 ILCS 180/30-10(a). Under the Bobak 53 agreement, any transferee takes only an economic interest, or the right to receive monetary distributions from the LLC. A transferee has no voting or management rights, unless the transferee is approved by unanimous vote of the remaining members. Def. Ex. 1. The Bobak 53 operating agreement makes no distinction between voluntary and involuntary transfers. As a result, a transferee that gains an interest in Bobak 53 through a forced sale or involuntary conveyance obtains only an economic or distributional interest in Bobak 53, unless she can win the consent of the remaining members.

Because a transferee must win approval of the other members to have the ability to exercise control over the management and business of the entity, there is considerable risk involved in acquiring an interest through a forced sale. Even were the transferee able to gain full management and voting rights, she would be severely limited in her ability to sell her interest by the same restrictions in the LLC agreement. As John Bobak notes, there is no ready market for such an asset. A public sale is, therefore, not the most an appropriate way to sell the property.

The Illinois LLC statute accords with this analysis. Section 30-20 provides the "exclusive remedy" of a judgment creditor of a LLC member seeking to satisfy a judgment via the member's interest. 805 ILCS 180/30-20(e). A court with jurisdiction "may charge the distributional interest of the judgment debtor to satisfy the judgment." *Id.* 180/30-20(a). The statute defines "distributional interest" as a member's rights to monetary distributions from the LLC. *Id.* 180/1-5. "A charging order constitutes a lien on the judgment debtor's distributional interest." *Id.* 180/30-20(b). Section 180/30-20(b) further provides that a court may order a foreclosure on that lien at any time. *Id.* Courts in other states with similar LLC statutes have interpreted this provision to allow a court to order the distributional interest charged with the payment of a judgment. *See Herring v. Keasler*, 150 N.C. App. 598, 600-01, 563 S.E.2d 614, 615-16 (2002) (holding that forced sale of a judgment debtor's membership interest was prohibited under North Carolina's LLC statute and that charging the distributional interest was the proper remedy). Section 30-20 also allows a court to appoint a receiver for the distributional interest. 805 ILCS 180/30-20(a). Though the Illinois Supreme Court has not spoken on

the matter, these provisions seems to contradict *Dowling*'s assertion that the only permissible method of disposal for an interest in an LLC is a public sale administered by the sheriff.

**C.     Proceedings in state court**

As noted earlier, shortly after this Court found John Bobak in contempt of court and imposed the fine at issue in this proceeding, John Bobak and his brother Joseph instituted proceedings in Illinois state court seeking, among other things, to dissolve Bobak 53. All of the claims in that case concern BSC or Bobak 53. In Count 4, John and Joseph Bobak seek an accounting from Stanley Bobak, the owner of two-thirds of the stock of BSC, for alleged mismanagement of Bobak 53. In Count 5, they seek Bobak 53's dissolution. The Bobak 53 claims concern alleged breaches of fiduciary duty reaching back to 2005.

Were the plaintiffs in the state court case to obtain an accounting, the value of John Bobak's interest in Bobak 53 might be enhanced. And it is indisputable that the dissolution of Bobak 53 would impact the value of John Bobak's interest in the entity, which at this point appears to be the only avenue for satisfaction of the contempt judgment that this Court imposed. That same interest is, of course, subject to the citation to discover assets issued from this Court. It is settled under Illinois law that service of a citation imposes a lien on the judgment debtor's personal property. *See* 735 ILCS 5/2-1402(m)(1); *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 878, 697 N.E.2d 788, 791 (1998).

As a result of the lien imposed by the citation, the state court proceeding, a likely remedy of which is to alter John Bobak's interest in Bobak 53, has a direct impact on this Court's jurisdiction over the disposition over that interest. Given these circumstances, an injunction barring the continued prosecution of the state court proceeding might be necessary to protect this Court's jurisdiction. Illinois law permits courts to "enjoin any person, whether or not a party to the supplementary proceeding, from making or allowing any transfer or other disposition of" nonexempt property subject to satisfaction of a judgment. 735 ILCS 5/2-1402(f)(2). A court can also require any person claiming an interest in a judgment debtor's nonexempt property to appear before the court in which collection proceedings are ongoing to maintain her right in that court. *Id.* 2-1402(g). In the Court's view, these provisions allow the Court to enjoin actions in a state court affecting John Bobak's membership interest in Bobak 53 and to require any claimants to make their claims on the interest—including via a dissolution proceeding—in this Court.

Any proposed injunction of a state court proceeding implicates the federal Anti-Injunction Act. The All Writs Act gives federal courts the power to stay state court proceedings. 28 U.S.C. § 1651. The Anti-Injunction Act, however, limits the use of that power to three circumstances: when it is expressly authorized by federal statute, when it is necessary in aid of the court's jurisdiction, or where it is necessary to effectuate the federal court's judgments. 28 U.S.C. § 2283. At issue in this case is the "in aid of jurisdiction" provision. This provision typically applies to *in rem* proceedings in which the federal court has jurisdiction over a specific *res*. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42 (1977). Several courts have extended the exception to cover

11

some kinds of *in personam* actions. *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996).

The Court has jurisdiction over John Bobak's interest in Bobak 53 via the citation to discover assets. The interest is a specific *res*, and, as discussed above, the prosecution of the state court threatens the Court's jurisdiction over the interest. As a result, it appears that the "in aid of jurisdiction" provision of Section 2283 applies, authorizing the Court to stay the state court proceeding, at least with respect to Counts 4 and 5.[1]

**Conclusion**

The Court denies, without prejudice, plaintiff's motion for a turnover order [docket number 105] but, for the reasons stated, orders John Bobak and others with a potential interest to show cause why the Court should not: (a) appoint a receiver for John Bobak's interest in Bobak Fifty Third Street LLC, and (b) enjoin further prosecution of Case No. 08 CH 05797 to the extent it impacts that interest. Responses to the order to show cause are to be submitted by November 14, 2008. Because John Bobak's counsel also represents Joseph Bobak in the state court case, Joseph Bobak is

---

[1] There is one other potential basis for the Court to enjoin the prosecution of the state court proceeding. The "in aid of jurisdiction" provision of Section 2283 permits an injunction of a state court case involving a "[l]itigant[] who engage[s] in forum shopping or otherwise take[s] advantage of our dual court system for the specific purpose of evading the authority of a federal court." *Winkler*, 101 F.3d at 1203 (internal quotation marks and citation omitted). The timing of John Bobak's suit, combined with his repeated failures to abide by the Court's orders, suggests that principle may apply in the present case.

deemed to have notice of this order. The case is set for a status hearing on November 18, 2008 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 3, 2008